IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

GLORIA RODRIGUEZ-VILANOVA,

    **Plaintiff,**

        **v.**                      **Civil No.** 11-1153 (FAB)

STRYKER CORPORATION,

    **Defendant.**

**MEMORANDUM & ORDER**

BESOSA, District Judge.

    On February 11, 2011, plaintiff Gloria Rodriguez-Vilanova ("Rodriguez") filed a complaint against Stryker Puerto Rico Ltd.[1]

---

[1] The complaint named as defendant Stryker Corporation, a parent corporation that owns the subsidiary Stryker Puerto Rico Ltd. Stryker Puerto Rico Ltd. answered the complaint with the caveat that the complaint incorrectly identified the defendant as Stryker Corporation, and continued to appear — with its caveat — in every pleading subsequently filed until it filed its memorandum of law in support of its motion for summary judgment. (Docket No. 31.) This appearance was especially baffling given that the motion for summary judgment was filed by Stryker Puerto Rico Ltd. Until the memorandum's filing, both Stryker entities had allowed the parties to progress in this litigation believing that a harmless misnomer had occurred. Now, Stryker Corporation disingenuously contends that plaintiff's claims against Stryker Corporation fail because it never employed plaintiff (Stryker Puerto Rico did) and consequently, it is not liable for the actions of its subsidiaries. (Docket No. 31 at p. 5.) This argument is a distraction. By submitting to the Court's jurisdiction, Stryker Puerto Rico Ltd. has long since waived its personal jurisdiction or insufficient service of process defenses. <u>Mitchell v. Hobbs</u>, 951 F.2d 417, 422 (1st Cir. 1991); Fed. R. Civ. P. 12(h)(1). Moreover, Stryker Corporation concedes that Stryker Puerto Rico, Ltd. was in fact the party served with the complaint. (Docket No. 44 at p. 3.) Thus, Stryker Puerto Rico Ltd. is the proper defendant in this litigation. Because plaintiff has not moved for a default judgment against Stryker Corporation, who only recently emerged, that issue is not before the Court.

("Stryker"), alleging discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and supplemental Puerto Rico law claims for discrimination pursuant to Law 44 and retaliation pursuant to Law 115.  (Docket No. 1.)  Stryker moved for summary judgment on December 11, 2013; plaintiff opposed the motion on December 27, 2013; and Stryker filed a reply on January 3, 2014.  (Docket Nos. 30, 41, 42, 44, & 45.)  For the reasons stated below, the Court **GRANTS** defendant Stryker's motion for summary judgment.

## I.   Evidentiary Issues

Before turning to defendant's motion for summary judgment, the Court first addresses a number of evidentiary matters raised by the parties that affect the summary judgment analysis.

### A.   Plaintiff's Motion to Strike

Plaintiff Rodriguez moves to strike exhibits 9, 11, 12, 13-17, 21, 24-26, and 28,[2] attached to defendant's proposed statement of uncontested material facts ("SUMF"; Docket No. 30-1), as (1) improperly authenticated and (2) inadmissible hearsay. (Docket No. 43.)  Plaintiff also moves to strike numerous paragraphs of the defendant's statement of facts as "self-serving." (Docket No. 43 at pp. 6-13.)

---

[2] The challenged exhibits are attached to declarations sworn under the penalty of perjury and certified as true.  These declarations satisfy 28 U.S.C. § 1746 and may thus be considered for the purpose of deciding the summary judgment motion.

Federal Rule of Civil Procedure 56 requires that affidavits submitted in connection with a motion for summary judgment "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c). "Documents supporting or opposing summary judgment must be properly authenticated." Carmona v. Toledo, 215 F.3d 124, 131 (1st Cir. 2000) (citing Fed. R. Civ. P. 56(e)). In order to be considered at the summary judgment stage, "'documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e)." Orsi v. Kirkwood, 999 F.2d 86, 92 (4th Cir. 1993) (citing 10A Charles A. Wright *et al.*, *Federal Practice and Procedure* § 2722, at 58-60 (1983 & 1993 Supp.)). Authentication is a condition precedent to admissibility, and is satisfied by "evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). Affidavits that are self-serving but contain first-hand knowledge are "competent to support or defeat summary judgment." Cadle Co. v. Hayes, 116 F.3d 957, 961 n. 5 (1st Cir. 1997).

For the purposes of summary judgment, the Court may not consider evidence that would be inadmissible at trial. Vazquez v. Lopez-Rosario, 134 F.3d 28, 33 (1st Cir. 1998). The proponent of evidence at the summary judgment stage carries the burden of showing that the material is either admissible as presented, or

explaining the admissible form that is anticipated at trial. Annotation, Fed. R. Civ. P. 56(c)(3).  The Court now turns to the exhibits plaintiff seeks to strike.

Defendant's exhibit 20 to its SUMF, the declaration of Carmen Eunice Vicil Berner, references and relies upon exhibit 28, "November 10, 2010 Memorandum from Carmen Vicil to Gamaliel Malave." (Docket No. 30-22.)  Vicil's declaration satisfies the requirements of Rule 56, demonstrates her personal knowledge regarding the contents of exhibit 28, and offers sufficient support to authenticate the exhibit.  Relevant statements contained in exhibit 28 would be admissible at trial as opposing party statements pursuant to Federal Rule of Evidence 801(d)(2).  The Court finds no problem with the admissibility or the authentication of exhibits 20 and 28.

Defendant's exhibit 4 to its SUMF, the declaration of Brenda Castillo Ruiz, references and relies upon exhibits 17 and 24-26.  (Docket No. 30-6.)  Castillo's declaration complies with Rule 56 and demonstrates her personal knowledge regarding the issues stated in her declaration.  The declaration provides sufficient basis to authenticate exhibits 24 and 25.  It does not, however, provide a basis to authenticate exhibit 26, which details a meeting between the plaintiff and another Stryker employee. Exhibits 24 and 25 could be presented in admissible form as records of a regularly conducted activity pursuant to Federal Rule of

Evidence 803(6).  Accordingly, defendant's exhibit 26 is **STRICKEN**, while exhibits 17, 24, & 25 remain in the record.

Defendant's exhibit 3, the declaration of Omar Lopez-Vazquez, references and relies upon defendant's exhibits 9, 11, 12-17, 19, and 21.  (Docket No. 30-5.)  Lopez's declaration satisfies Rule 56, demonstrates his personal knowledge of the exhibits attached to his statement, and provides a sufficient basis to conclude that the exhibits are what defendant claims them to be. In its opposition to plaintiff's motion to strike, defendant also included the declaration of Nayda Melendez Gonzalez attesting to her and Lopez's capacities as records custodians of these challenged exhibits.  (Docket No. 46-2.)  This declaration provides a sufficient explanation for the exhibits' admissibility at trial as records of a regularly conducted activity.  See Fed. R. Evid. 803(6).  Because the Court finds no issue with exhibits 9, 11, 12-17, 19, and 21, they accordingly remain in the record.

The Court declines to engage plaintiff's attempt to strike numerous paragraphs of defendant's SUMF as self-serving and/or unsupported by factually specific affidavits.  (Docket No. 43 at pp. 6-13.)  The more appropriate forum for raising these qualms is in the plaintiff's objections to the defendant's SUMF, rather than in a separate motion to strike.  In keeping with its duties pursuant to Rule 56(e), the Court will not consider facts unsupported by the record.

For these reasons, plaintiff's motion to strike is **GRANTED** as to defendant's exhibit 26, **DENIED** with respect to exhibits 9, 11, 12, 13-17, 19, 21, 24, 25 and 28, and **DENIED** with respect to numerous paragraphs in defendant's SUMF.

**B.    Defendant's Motion to Strike**

Defendant moves to strike plaintiff's December 26, 2013 statement as contradictory to her October 22, 2013 deposition testimony, as well as certain attached exhibits because they were not produced prior to the discovery deadline.  (Docket No. 47.[3]) "When an interested witness has given clear answers to unambiguous questions, [she] cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed." <u>Colantuoni v. Alfred Calcagni & Sons, Inc.</u>, 44 F.3d 1, 4-5 (1st Cir. 1994) (internal citations omitted).  When presented with those circumstances, a district court may disregard the latter statement in ruling on summary judgment.  <u>Id.</u> at 5.  After

---

[3] In support of its motion to strike, defendant cites to pages of plaintiff's deposition, excerpts of which were attached to its motion for summary judgment and its reply to plaintiff's opposition.  (Docket Nos. 30-3 & 45-1.)  The Court notes its frustration and bewilderment with defense counsel's choice to haphazardly upload nonconsecutively-numbered pages of the deposition transcript, and with counsel's failure to cite to the exhibits.  In further violation of the anti-ferret rule, <u>see</u> Loc. R. Civ. P. 56(e), defendant cites to pages of plaintiff's deposition that are not included in its attachments.  The portions of defendant's argument that are unsupported by exhibits will not be considered by the Court.

reviewing the contested paragraphs in plaintiff's December 26, 2013 statement and comparing them to plaintiff's deposition testimony, the Court does not find that the statements completely contradict one another.

Defendant further moves to strike several exhibits attached to plaintiff's statement because they were not produced prior to the discovery cutoff.  If a party fails to provide information prior to the end of discovery, the party cannot use the information to support a motion or at trial "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).  Plaintiff has not had the opportunity to explain or justify the delay in its disclosure of these documents.  See Samaan v. St. Joseph Hosp., 670 F.3d 21, 36-7 (1st Cir. 2012)(taking into account a number of factors when determining sanctions for discovery violations, such as "the history of the litigation, the proponent's need for the challenged evidence, the justification (if any) for the late disclosure, and the opponent's ability to overcome its adverse effects," including "[s]urprise and prejudice.").  Because the Court finds that defendants were neither unduly surprised nor prejudiced by plaintiff's tardy production of the exhibits, and that plaintiff's exhibits are relevant to her ability to overcome summary judgment, the Court will not strike the exhibits.

Defendant further moves to strike several paragraphs of plaintiff's statement because they were not raised in her

deposition testimony.  Because defendant fails to demonstrate the truth of this assertion, the Court declines defendant's request to strike these paragraphs.  For these reasons, defendant's motion to strike is **DENIED**.

## II.  Summary Judgment

### A.  Summary Judgment Standard

Summary judgment serves to assess the evidence and determine if there is a genuine need for trial.  Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990).  The Court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it has the potential to "affect the outcome of the suit under the governing law."  Id.  A dispute is "genuine" when it "could be resolved in favor of either party."  Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).  The party moving for summary judgment has the initial burden of "demonstrat[ing] the absence of a genuine issue of material fact" with definite and competent evidence.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).  It must identify "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any'" which support its motion.  Id. (citing Fed. R. Civ. P. 56(c)).  Once a properly

supported motion has been presented, the burden shifts to the non-
moving party "to demonstrate that a trier of fact reasonably could
find in [its] favor." Santiago-Ramos v. Centennial P.R. Wireless
Corp., 217 F.3d 46, 52 (1st Cir. 2000) (internal citation omitted).

It is well-settled that "[t]he mere existence of a
scintilla of evidence" is insufficient to defeat a properly
supported motion for summary judgment. Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 252 (1986). "[A] party opposing summary
judgment[, therefore,] must 'present definite, competent evidence
to rebut the motion.'" Maldonado-Denis, 23 F.3d at 581 (internal
citation omitted). In making this assessment, the Court must take
the entire record in the light most favorable to the nonmoving
party and draw all reasonable inferences in its favor. Farmers
Ins. Exch. v. RNK, Inc., 632 F.3d 777, 779-80 (1st Cir. 2011).

   **B.   Uncontested Facts**

Plaintiff began working for Stryker on January 18, 2005
as a Buyer in the Irrigation Unit of the Instruments Division.
(Docket No. 30-3 at p. 23.) Ruth Candelario supervised plaintiff
until April 2009, when Patricia Colon became plaintiff's
supervisor. (Docket No. 30-1 at ¶ 8.) Plaintiff began suffering
from back pain in 2006 and was diagnosed with degenerative disc
disease and neuropathy in both legs in April of 2007. (Docket
No. 41-1 at ¶ 42.) Stryker provided plaintiff with all requested
leave and necessary accommodations until April 2009. (Docket

No. 30-1 at ¶ 14.)  After April 2009, plaintiff's supervisor Colon
began making negative comments towards plaintiff regarding her
medical condition.  (Docket No. 41-1 at ¶ 44.)  In 2008, plaintiff
was promoted to the position of Senior Buyer.  (Docket No. 30-1 at
¶ 16.)  She received merit wage increases in 2006, 2007, 2008, and
2010.  (Docket No. 30-1 at ¶ 19.)  During Stryker's annual
performance evaluations from 2005 to 2009, plaintiff consistently
received positive evaluations, but her 2005, 2006, 2008, and 2009
reviews included comments regarding her uncooperative or defensive
attitude.  (Docket Nos. 30-14, 30-15, 30-16, 30-17, & 30-18.)

        In 2009, Stryker decided to restructure the Materials
Department, effective January 2010.  (Docket Nos. 30-5 at ¶¶ 18-20;
30-6 at ¶¶ 8-9.)  Through the restructuring, Stryker intended to
rotate employees through the different units and positions in order
to provide them with an opportunity to broaden and diversify their
knowledge of the different functions within the Materials
Department, and eventually become qualified to serve in the new
combined position of Buyer/Planner.  (Id.)  Plaintiff underwent
back surgery on October 26, 2009, and took medical leave from
October of 2009 to January 27, 2010.  (Id. at 43; Docket No. 30-6
at ¶ 17.)  Upon her return from leave and pursuant to the
restructuring, plaintiff was reassigned to a position as Planner in
the Cement Unit of the Instruments Division, and Brenda Castillo
Ruiz became her supervisor. (Docket Nos. 30-1 at ¶ 9; 30-6 at ¶

18.) Two other employees, Coraly Moreno and Josue Pacheco, were also reassigned to new positions at that time. (Docket No. 30-6 at ¶¶ 10-12.)  In August of 2010, Carmen Vicil became plaintiff's direct supervisor. (Docket No. 30-6 at ¶7.)  For her new position, plaintiff received two weeks of training, as well as individualized online training.  (Docket Nos. 30-6 at ¶¶ 18-19; 30-25.)

        Plaintiff's reassignment did not impact her pay, benefits, or eligibility for pay increases.  (Docket Nos. 30-5 at ¶¶ 25-27; 30-23.)  Though plaintiff's new title did not include the word "Senior," she did not lose seniority as a result of the reassignment.  (Docket No. 30-5 at ¶ 28.)  In March of 2010, Castillo completed "First Month Performance Overviews" for plaintiff, Moreno, and Pacheco.  (Docket Nos. 30-6 at ¶ 21; 30-24; 30-26; 30-27.)  Plaintiff's evaluation indicated that she met or exceeded expectations in all areas except flexibility.  (Docket No. 30-24.)  The negative review regarding flexibility was based on an incident in which a colleague had attempted to coordinate with plaintiff for the next day's manufacturing priorities, but plaintiff had already left. (Docket No. 30-24; 30-6 at ¶ 22.)  On April 16, 2010, plaintiff filed a charge with the Antidiscrimination Unit of the Puerto Rico Labor and Human Resources Department ("ADU") and the Equal Employment Opportunity Commission ("EEOC") alleging that her January 2010 reassignment

constituted a discriminatory demotion in violation of the ADA. (Docket No. 30-32.)

On October 12, 2010, plaintiff applied for the position of "Supplier Engineer." (Docket No. 41-8.)  The "Supplier Quality Engineer"[4] position was offered to another employee, Mara Ruiz-Muñiz, on October 21, 2010.  (Docket Nos. 30-5 at ¶ 31; 30-20.) Plaintiff met with Gamaliel Malave, Stryker's Director of Human Resources, on October 25, 2010.  (Docket No. 30-9 at ¶ 9.)  On October 27, 2010, plaintiff met with Vicil and Kattie Mojica, plaintiff's unit manager, to discuss plaintiff's performance in her role as Planner.  (Docket No. 30-22 at ¶ 6-7.)  The Supplier Engineer position was in the same grade and compensation level as the Planner position.[5]  (Docket No. 30-23.)  Stryker's internal hiring policy requires an employee to obtain his or her supervisor's approval and recommendation before he or she can be considered for a new position within the company. (Docket Nos. 30-11; 30-9 at ¶ 4.)

Plaintiff filed a second charge with the ADU and EEOC on November 3, 2010 alleging retaliation in violation of the ADA. (Docket No. 30-1 at ¶ 56.)  On January 24, 2011, plaintiff filed a

---

[4] Plaintiff contends that she applied for a different position than the one that was offered to Ms. Ruiz, and that this information is therefore irrelevant.  Defendant does not offer an explanation for the apparent discrepancy in position titles.

[5] This is also true of the Supplier Quality Engineer position. (Docket No. 30-23.)

third charge with the ADU and EEOC against Stryker, again alleging retaliation in violation of the ADA.  (Docket No. 30-34.)

Plaintiff became a Buyer/Planner in the Blood Unit in January of 2012.  (Docket No. 30-3 at p. 66.)

### C.  Plaintiff's ADA Discrimination Claim

#### 1.  *Prima Facie* Case

In the absence of direct evidence of discrimination, courts reviewing ADA discrimination claims employ a burden-shifting framework.  Tobin v. Liberty Mut. Ins. Co., 433 F.3d 100, 104 (1st Cir. 2005) (citing McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973)); Dichner v. Liberty Travel, 141 F.3d 24, 29-30 (1st Cir. 1997).  First, a plaintiff must establish a *prima facie* case of disability discrimination pursuant to the ADA by showing by a preponderance of the evidence:  (1) that she was disabled within the meaning of the ADA; (2) that she was a qualified individual; and (3) that she suffered an adverse employment action because of her disability.  See Tobin, 433 F.3d at 104; Phelps v. Optima Health, Inc., 251 F.3d 21, 24 (1st Cir. 2001); Ward v. Mass. Health Research Inst., Inc., 209 F.3d 29, 33 (1st Cir. 2000).  The parties do not meaningfully dispute the first two elements of this claim.  Thus, the Court will focus on the third: whether plaintiff suffered an adverse employment action because of her disability.

Plaintiff claims that as a result of her disability, she suffered the following adverse employment actions:  (1) a

demotion in January of 2010 when she was reassigned to the position of Planner, (Docket No. 1 at ¶ 9); (2) failure to receive a job description or formal training for her new position, (Docket No. 1 at ¶¶ 14-15, 19); and (3) an out-of cycle negative performance evaluation in March of 2010, (Docket No. 1 at ¶ 19).  An adverse employment action involves a discrete change in the terms and conditions of employment, such as "hiring, firing, failing to promote, reassignment with significantly diminished responsibilities, or a decision causing significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998); De Jesus v. Potter, 211 Fed. Appx. 5, 9 (1st Cir. 2006). "[A] *purely* lateral transfer . . . that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action." Marrero v. Goya of P.R., Inc., 304 F.3d 7, 23 (1st Cir. 2002) (quoting Lederberger v. Stangler, 122 F.3d 1142, 1144 (8th Cir. 1997)).  However, "job discrimination can take many forms, and does not always manifest itself in easily documentable sanctions such as salary cuts or demotions."  Id.

        The Court finds that of the alleged adverse employment actions, plaintiff has only offered sufficient evidence of one - that she was demoted in January of 2010.  There is no factual support for the allegation that she received no job training for her new position.  To the contrary, it is uncontested that after plaintiff was reassigned to the position of Planner, she

received two weeks of training from her predecessor, Morales, and participated in position-specific online trainings. (Docket Nos. 30-6 at ¶¶ 18-19; 30-25.) The Court finds that, as a matter of law, the fact that plaintiff did not receive a formal job description for her new position cannot constitute an adverse employment action for the purposes of an ADA discrimination claim. See Marrero, 304 F.3d at 23 (stating that "the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action.") (internal quotation omitted). Furthermore, the Court finds insufficient factual support for the allegation that plaintiff received an out-of-cycle negative review in March of 2010. The uncontested facts show that plaintiff's supervisor, Castillo, completed "First Month Performance Overviews" for plaintiff, Moreno, and Pacheco, (Docket Nos. 30-6 at ¶ 21; 30-24; 30-26; 30-27); and that plaintiff's evaluation indicated that she met or exceeded expectations in all areas except flexibility. (Docket No. 30-24.) The record suggests that this evaluation as a whole was a positive one. The one negative remark regarding flexibility in the evaluation does not rise to the level of a materially adverse employment action. See Sweeney v. West, 149 F.3d 550, 557 (7th Cir. 1998) (finding that two negative counseling statements, similar to negative performance evaluations, did not constitute materially adverse employment actions.)

"Mindful that an employee's burden at the *prima facie* stage is not particularly onerous," however, the Court finds that the evidence is minimally sufficient to show that an issue exists as to the nature of plaintiff's transfer from Senior Buyer to Planner in January of 2010. <u>See</u> <u>Melendez v. Autogermana, Inc.</u>, 622 F.3d 46, 51 (1st Cir. 2010).  Though defendant offers some evidence that the transfer was purely lateral and involved no changes to pay, benefits, or responsibilities, plaintiff offers some evidence that the two positions were not equal.  Rather, the position of Planner requires zero to two years of experience, while the position of Buyer requires two to four years of experience, suggesting different levels of qualifications and seniority. (<u>Compare</u> Docket Nos. 41-2 & 41-3.)  Thus, the plaintiff has made the minimum showing required for a *prima facie* case of discrimination pursuant to the ADA.

## 2.   Legitimate and Nondiscriminatory Reason

Once a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the alleged employment action. <u>McDonell-Douglas Corp.</u>, 411 U.S. at 802; <u>Tobin</u>, 433 F.3d at 105.  Defendant contends that even if plaintiff establishes a *prima facie* case of discrimination, her reassignment was the result of a legitimate, nondiscriminatory business decision: a department-wide restructuring that impacted three employees — plaintiff,

Morales, and Pacheco.  (Docket Nos. 30-5 at ¶¶ 18-20; 30-6 at ¶¶ 8-9.)  The restructuring was intended to rotate employees through different units and positions within the Materials Department, enabling them to qualify eventually for the position of Buyer/Planner.  (Id.)  This reason is sufficient to "enable a rational factfinder to conclude that there existed a nondiscriminatory reason" for plaintiff's reassignment.  Ruiz v. Posadas de San Juan Assocs., 124 F.3d 243, 248 (1st Cir. 1997).

### 3.   Plaintiff's Showing of Pretext

At the final stage of the burden-shifting analysis, the burden shifts back to the employee to put forth sufficient facts for a reasonable fact-finder to conclude that defendant's "justification is mere pretext, cloaking discriminatory animus." Tobin, 433 F.3d at 105.  In order to show pretext, the plaintiff must offer evidence both that the asserted reason was false _and_ that the true reason was discrimination based on disability.  See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515 (1993); Lattimore v. Polaroid Corp., 99 F.3d 456, 465 (1st Cir. 1996).  It is here that plaintiff's claim fails.  The Court finds absolutely no evidence in the record pertaining to plaintiff's claim that defendant discriminated against her based on her disability. Plaintiff's only argument on this front is that when she was originally notified of the reassignment while she was on medical leave, her then-supervisor Colon told her it was due to a

reorganization in the Purchasing Department, rather than the
Materials Department, as defendant now contends. (Docket No. 41-1
at ¶ 15.) Plaintiff fails to elucidate for the Court how this
potential discrepancy might indicate that Stryker's departmental
restructure was a means of masking a discriminatory demotion based
on plaintiff's degenerative disc disease. To the contrary, the
uncontested facts demonstrate that plaintiff became a Buyer/Planner
in January of 2012, consistent with Stryker's restructuring goals.
(Docket No. 30-3 at p. 66.) Plaintiff also fails to offer evidence
in support of an inference that because she was notified of the
reassignment while she was on medical leave, the move was
discriminatory. In the absence of any other evidence, the record is
insufficient to support a finding that the true reason for
plaintiff's reassignment was disability-based animus. Accordingly,
the Court **GRANTS** defendant's motion for summary judgment on
plaintiff's ADA discrimination claim, and it is **DISMISSED WITH
PREJUDICE.**

> ### D.   **Plaintiff's Hostile Work Environment Claim**

Plaintiff further contends that she was subjected to a
hostile work environment as a result of her disability, in
violation of the ADA. (Docket No. 42 at pp. 13-4.) To prevail on
a hostile work environment claim, "a plaintiff must show that her
'workplace [was] permeated with discriminatory intimidation,
ridicule, and insult that [was] sufficiently severe or pervasive to

alter the conditions of . . . [her] employment and create an abusive working environment." Colon-Fontanez v. Municip. of San Juan, 660 F.3d 17, 43 (1st Cir. 2011) (quoting Quiles-Quiles v. Henderson, 439 F.3d 1, 7 (1st Cir. 2006) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993))). This determination includes consideration of "the severity of the conduct, its frequency, and whether it unreasonably interfered with the victim's work performance." Id.; see also Rios-Jimenez v. Principi, 520 F.3d 31, 43 (1st Cir. 2008). Case law is clear that "'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment'" sufficient to establish a hostile or abusive work environment. Colon-Fontanez, 660 F.3d at 44 (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)). "An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively hither) authority over the employee." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998).

Plaintiff bases her hostile work environment claim on the following incidents:

- Between April 2009 and October 2009, plaintiff's new supervisor, Colon, made several comments complaining about plaintiff's doctors'

appointments, such as "Now? Again?" (Docket
No. 41-1 at ¶ 44; 30-3 at pp. 83.)

- In August 2009, Colon asked plaintiff how she was
  feeling. When plaintiff responded that she was in
  pain, Colon said, "Oh, my husband has a herniated
  disc also and when he feels pain, he can't even
  walk and yet you're walking." (Docket No. 30-3 at
  p. 83.)

- On September 28, 2009, when plaintiff notified the
  company that she would be undergoing back surgery
  on October 26, 2009, Colon told plaintiff: "Well,
  you've waited so long, why can't you just wait
  until November." (Docket No. 41-1 at ¶ 45; 30-3 at
  p. 85.)

- While plaintiff was on leave prior to her October
  2009 surgery, her unit manager, Jessica Lozada,
  informed plaintiff's co-workers that plaintiff
  would be out for three months due to a back
  surgery, in violation of HIPAA. (Docket No. 30-3
  at p. 135.)

- In mid-February of 2010, plaintiff's new
  supervisor, Castillo, said to her, "This position
  requires your presence to carry it out," (Docket
  No. 41-1 at ¶ 50), and "Well, if you were doing so

badly healthwise, you couldn't work then." (Docket

No. 30-3 at p. 152.)

Viewing the facts in the light most favorable to the

plaintiff, these comments were at most rude, unprofessional, and

indicative of a tense working relationship between plaintiff and

her new supervisors.  These isolated, offhand incidents, however,

do not rise to the level of severity or pervasiveness that a

reasonable employee would find to have materially altered the

conditions of her employment such that an abusive work environment

was created.  A reasonable jury could not conclude based on these

comments that plaintiff's "workplace [was] permeated with

discriminatory intimidation, ridicule, and insult," or that the

conduct unreasonably interfered with plaintiff's work performance.

Colon-Fontanez, 660 F.3d at 44.  Accordingly, defendant's motion

for summary judgment on plaintiff's ADA hostile work environment

claim is **GRANTED**, and the same is **DISMISSED WITH PREJUDICE.**

### E.    Plaintiff's ADA Retaliation Claim

Plaintiff claims that as a result of her filing a charge

of discrimination with the ADU and EEOC on April 16, 2010, Stryker

retaliated against her by refusing to consider her application for

a promotion, which she submitted on October 12, 2010.  (Docket

No. 42 at p. 15.)  The ADA's retaliation provision prohibits

discrimination "against any individual because such individual has

opposed any act or practice made unlawful by this chapter or

because such individual made a charge . . . or participated in any manner in an investigation, proceeding or hearing under this chapter."  42 U.S.C. § 12203; Freadman v. Metropo. Prop. & Cas. Ins. Co., 484 F.3d 91, 106 (1st Cir. 2007).  An ADA plaintiff may assert a retaliation claim even if she is unsuccessful on her disability claim(s).  Colon-Fontanez, 660 F.3d at 36 (internal citations omitted); Freadman, 484 F.3d at 106.  To establish a claim of retaliation, a plaintiff must show that "(1) she engaged in protected conduct, (2) she suffered an adverse employment action, and (3) there was a causal connection between the protected conduct and the adverse employment action."  Freadman, 484 F.3d at 106 (internal citations omitted).

        Stryker does not dispute that plaintiff engaged in protected activity.  Instead, it contests plaintiff's ability to show that she suffered an adverse employment action and a causal connection between the protected conduct and the adverse employment action.  To establish an adverse employment action, a plaintiff must show that "a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  Colon-Fontanez, 660 F.3d at 36 (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)).  For a retaliatory action to be material, it must produce "a significant, not trivial, harm."  Carmona-Rivera, 464

F.3d at 20.  Actions such as "petty slights, minor annoyances, and simple lack of good manners will not [normally] create such deterrence."  Burlington N., 548 U.S. at 68.  "[D]emotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees," however, may constitute adverse employment actions.  Hernandez-Torres v. Intercont'l. Trading, Inc., 158 F.3d 43, 47 (1st Cir. 1998).

Plaintiff filed a discrimination charge with the ADU and EEOC on April 16, 2010.  The record shows that plaintiff submitted an application for the position of "Supplier Engineer" on October 12, 2010.[6]  (Docket No. 41-8.)  On October 25, 2010, plaintiff met with Gamaliel Malave, the Director of Human Resources.  Plaintiff thought the meeting was to discuss her application for the new position, (Docket No. 30-3 at p. 193), while Malave thought the meeting was to discuss plaintiff's use of pursuant to the Family Medical Leave Act leave.  (Docket No. 30-9 at ¶ 9.)  Defendant contends that once plaintiff inquired about the position, Malave informed plaintiff that the position had already been offered to someone else.  (Id. at ¶ 11.)  Defendant contends that Malave further informed plaintiff that prior to considering a

---

[6] The parties dispute whether the position plaintiff applied for constituted a promotion.  (See Docket Nos. 30-1 at ¶ 52; 41-1 at ¶¶ 50-53.)  The Court need not resolve this dispute in order to analyze the viability of plaintiff's retaliation claim.

current employee for a new position within the company, an employee must first obtain her supervisor's feedback.  (Id. at ¶ 12.) Malave then called plaintiff's supervisor, Vicil, who stated that she had not met with plaintiff to discuss performance deficiencies yet.  (Id.; Docket No. 30-22 at ¶ 5.)  Two days later, plaintiff met with her supervisors, Vicil and Mojica, who gave her an unfavorable evaluation.  (Docket Nos. 30-22 at ¶ 6; 41-1 at ¶ 39.)

        Plaintiff disputes the veracity of Malave's representations regarding the company policy and the purpose of the meeting.  She also contends that she had met with Vicil and Mojica days prior to her meeting with Malave; in that meeting, neither supervisor mentioned a performance issue, and they had encouraged her to apply for the new position.  (Docket No. 41-1 at ¶ 35.) Based on these disputed facts, plaintiff contends that Malave, Vicil, and Mojica created a hostile work environment and denied her an employment opportunity in retaliation for filing a charge with the ADU and EEOC.

        Assuming arguendo that plaintiff can establish that Stryker's denial of a new employment opportunity constituted an adverse employment action, her retaliation claim must fail because plaintiff cannot demonstrate causality.  Causality requires proof of a nexus between the protected conduct and the alleged retaliatory act, Wright v. CompUSA, Inc., 352 F.3d 472, 478 (1st Cir. 2003), and can be established by many sources of

circumstantial evidence.  Mesnick v. Gen. Elec. Co., 950 F.2d 816,
828 (1st Cir. 1991).  A plaintiff can demonstrate causation, for
example, "by establishing that the employer's knowledge of the
protected activity was close in time to the employer's adverse
action."  Wyatt v. City of Boston, 35 F.3d 13, 16 (1st Cir. 1994)
(per curiam).  "The cases that accept mere temporal proximity
between an employer's knowledge of protected activity and an
adverse action as sufficient evidence of causality uniformly hold
that the temporal proximity must be 'very close.'"  Clark Cnty.
Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (internal
citations omitted).  See also Colon-Fontanez, 660 F.3d at 39
(finding seven months to be an insufficient period to establish
causality based on temporal proximity); Calero-Cerezo, 355 F.3d
at 25 (noting that "[t]hree and four month periods have been held
insufficient to establish a causal connection based on temporal
proximity.")

        The Court finds that plaintiff's claim lacks a sufficient
temporal nexus.  More than six months elapsed from the time
plaintiff filed her first charge with the ADU and EEOC and the time
Stryker denied her employment opportunity.  Given that the
discrimination charge was not directed at Malave, Vicil, or Mojica
— the individuals who allegedly engaged in the retaliatory conduct
— the mere facts of the charge being filed and the promotional
opportunity being denied, without more, do not raise an inference

of retaliation here.  Nor does plaintiff offer any additional circumstantial evidence that would suggest a causal connection, such as "comments by the employer which intimate a retaliatory mindset," Mesnick, 950 F.2d at 828, or evidence of a "'pattern of antagonism' following the protected conduct," Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997).  Because plaintiff has not established causality, her retaliation claim fails.  The Court accordingly **GRANTS** defendant's motion for summary judgment of plaintiff's retaliation claim, and it is **DISMISSED WITH PREJUDICE.**

### F.   Plaintiff's Supplemental Puerto Rico Law Claims

Plaintiff's claims for disability discrimination and retaliation pursuant to Puerto Rico Laws 44 and 115 are virtually identical to her ADA claims.  Puerto Rico Law 44 is "the Puerto Rico analogue to the ADA" and its elements are coterminous.  Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 87 (1st Cir. 2008). Similarly, retaliation claims pursuant to Law 115 utilize the same "evidentiary mechanism" as the McDonnell-Douglas framework employed in assessing plaintiff's ADA retaliation claim.  See Rivera Rodriguez v. Sears Roebuck de P.R., Inc., 367 F. Supp. 2d 216, 230 (D.P.R. 2005) (Acosta, J.).  The success of plaintiff's Puerto Rico law claims hinges on the success of her ADA claims; they thus necessarily fail to survive summary judgment for the same reasons. Accordingly, defendant's motion for summary judgment on plaintiff's

claims for disability discrimination and retaliation pursuant to Puerto Rico Laws 44 and 115 is **GRANTED**, and they are **DISMISSED WITH PREJUDICE.**

## III. Conclusion

For the reasons explained above, plaintiff's claims for disability discrimination, hostile work environment, and retaliation pursuant to the ADA, as well as her claims pursuant to Puerto Rico Laws 44 and 115, are **DISMISSED WITH PREJUDICE.** This case is **DISMISSED IN ITS ENTIRETY.**

Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, January 17, 2014.

                              s/ Francisco A. Besosa
                              FRANCISCO A. BESOSA
                              UNITED STATES DISTRICT JUDGE